IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CURLEY ANTONIO EDLER,
    Plaintiff,

vs.                                           Case No. 5:08cv275/SPM/EMT

J.K. SCHWARZ, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Curley Edler ("Edler") proceeds pro se and in forma pauperis in this action brought pursuant to 42 U.S.C. § 1983. Presently before the court is the motion for summary judgment filed by Defendants Hall, Wellhausen, and Coffey,[1] with a statement of undisputed material facts, supporting memorandum, and supporting evidence (Docs. 102, 124, 128, 133). Edler filed a response in opposition to the motion, with a statement of undisputed facts and supporting evidence (Docs. 154, 155). For the reasons stated below, the court recommends that the motion for summary judgment be granted.

I.     BACKGROUND

Edler, an inmate who was incarcerated at Holmes Correctional Institution ("HCI") at the time the events at issue in this case took place, initiated this action by filing a civil rights complaint on August 31, 2008 (Doc. 1). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive actions. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). In the Amended Complaint (Doc. 36), which is the operative pleading in this case, Edler names twelve

---

[1] Plaintiff misspelled Defendant Coffey's name as "Coffee" in his amended complaint (*see* Doc. 36 at 1; Doc. 102-3, Affidavit of Ronald Coffey)

Defendants. Edler's claims arise from an alleged sexual assault and use of excessive force by Defendant Forehand (Doc. 36, Statement of Facts). Liberally construing Edler's factual allegations and his description of constitutional rights that were allegedly violated, he appears to assert the following claims against Defendants Coffey, Hall, and Wellhausen: (1) Coffey, Hall, and Wellhausen were deliberately indifferent to his safety by failing to adequately investigate his allegations of sexual assault and excessive force by Forehand, (2) Coffey, Hall, and Wellhausen were deliberately indifferent to his need for medical care for the injuries he allegedly suffered as a result of Defendant Forehand's conduct, and (3) Coffey, Hall, and Wellhausen violated his due process rights by failing to adequately investigate his allegations concerning Forehand (Doc. 36, Statement of Facts, Statement of Claims).[2] As relief, he seeks a declaratory judgment and unspecified compensatory damages (Doc. 36, Relief Requested).

On January 4, 2010, Defendants Hall, Wellhausen, and Coffey filed a motion for summary judgment and supporting documents (Doc. 102, 124, 128, 133). The court advised the parties of the importance and ramifications of Rule 56 summary judgment consideration, informed the parties of the requirements of materials that may be considered on summary judgment, and directed Edler to respond to the motion for summary judgment (Doc. 103). After much discovery and several extensions of the deadline for Edler to file a response, he filed a response and supporting documents (Docs. 154, 155).

Upon review of the summary judgment record, it is the opinion of the undersigned that the summary judgment motions filed by Defendants Hall, Wellhausen, and Coffey should be granted.

II. PLAINTIFF'S ALLEGATIONS[3]

In Edler's amended complaint, he alleges that on August 2, 2008, at approximately 1:30 p.m. during the process of his being placed in administrative confinement, he made a comment to

---

[2] Although the magistrate judge previously assigned to this case construed Edler's allegations as asserting only Eighth Amendment claims (*see* Doc. 92), upon review of Edler's Statement of Claims, it appears that Edler included claims of denial of his due process right with regard to Coffey, Hall, and Wellhausen's failure to investigate his allegations of excessive force and sexual assault (Doc. 36, Statement of Claims). Therefore, the undersigned will evaluate the due process claims in light of the summary judgment evidence.

[3] Edler's allegations involving all Defendants are included to provide context to his claims against Defendants Hall, Wellhausen, and Coffey.

Case No.: 5:08cv275/SPM/EMT

Defendant Forehand, which led Forehand to "check" him, press his head into the wall, "knee" him several times in his lower back, and sexually assault him (Doc. 36 at 7, 9).[4, 5] Edler alleges Defendant Marsh was present during the alleged incident and failed to stop it (*id.* at 7). He also alleges Marsh "forced [him] down the hallway" after the incident (*id.*). Edler alleges he was in so much pain from Defendant Forehand's use of excessive force that he could not stand on his own, and he declared a medical emergency to obtain medical care for his injuries (*id.*). He alleges Forehand and Marsh refused to take him to the medical department for medical care (*id.* at 7–8).

Edler asserts that upon his arrival at the administrative confinement unit, he asked Defendant Langford for a medical emergency because he was sexually abused by Forehand, but Langford refused to seek medical care and told him that if he said anything, he would "be gotten rid of" (*id.* at 8). Edler alleges Langford ordered him to remove his clothing for a strip search prior to entering his administrative confinement cell, but Edler refused to remove his clothing or submit to a strip search (*id.*). Defendant Langford allegedly became verbally abusive towards Edler (*id.*). Edler alleges he told Langford he required medical attention because he was dizzy and suffering severe back pain, but Langford again failed to obtain medical care (*id.*).

Edler alleges that at approximately 2:00 p.m. that same day, he told Defendant Scott that he had just been sexually abused by Forehand and needed emergency medical treatment (*id.*). Instead of seeking medical treatment, Defendant Scott allegedly determined that Edler should be issued a disciplinary report for accusing Forehand of sexual abuse (*id.*).

Edler asserts that later that day, at approximately 3:55 p.m., he told Defendant Watkins that he required medical care because he was experiencing blackouts and pain in his lower back from Defendant Forehand's knees while Forehand was sexually abusing him (*id.* at 9). Edler states

---

[4] The page numbers used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[5] In Edler's deposition, submitted by Defendants in support of their motion for summary judgment, Edler stated that the comment he made to Forehand was "Fuck you," at which time Forehand and Defendant Marsh escorted him to a hallway, and Forehand grabbed him around his neck, pressed his head against the wall, and struck him in the back with his knees (Doc. 128, Deposition of Curley Antonio Edler 10:1–14, Feb. 16, 2010). Edler additionally stated that while he was down on the floor, Forehand "pulled his penis out of his pants and primed his penis until it became hard and demanded I gave [sic] him oral sex." (*id.*).

Case No.: 5:08cv275/SPM/EMT

Watkins became "very disrespectful," threatened to "gas" him, and refused to obtain medical care (*id.*).

Edler alleges Defendant Nurse Dodds came to his cell at 6:25 p.m. to administer ear drops, and she asked why he had dried blood on his neck (*id.*). Edler informed her of Defendant Forehand's actions and that he (Edler) felt something in his back "pop" when he moved to the right or left (*id.*). Defendant Watkins allegedly overheard the conversation between Edler and Nurse Dodds, and when Nurse Dodds left to obtain medical supplies, Defendant Watkins allegedly told Edler that he (Edler) would "wake up in a body bag" if Edler said anything to Nurse Dodds (*id.*). Upon Nurse Dodds' return five minutes later, she cleaned Edler's neck (*id.*). Edler advised her that he was suffering severe pain in his back, dizziness, blackouts, blurred vision, watery eyes, and unstable breathing, but Nurse Dodds did not conduct a physical examination, order x-rays or other tests, provide pain medication, or document Edler's complaints (*id.* at 9–10).

Three days later, on August 5, 2008, Edler alleges he informed Defendant Schwarz that Defendant Forehand sexually abused him and Defendant Marsh failed to stop it (*id.* at 10). Edler alleges Schwarz told him that if he did not stop telling lies, he (Schwarz) would "roll [Edler's] door" and allow Edler to "rot" in confinement (*id.*). Edler also alleges Schwarz had been told by other officers that Edler required medical care, but Schwarz failed to seek medical treatment (*id.*).

Edler asserts that on August 8, 2008, he was taken to the medical department for an examination before he met with Defendant Coffey regarding the alleged incident involving Forehand (*id.*). Edler states the medical examination revealed some discoloration on his neck and lower back (*id.* at 10–11). Edler complained of pain in his neck when he turned it from side to side, which had worsened in the days since the alleged abuse (*id.* at 11). Edler was interviewed by Defendant Coffey, an inspector assigned to investigate the alleged sexual assault (*id.*). During the interview, which was recorded on audiotape, Edler told Coffey that he was not comfortable speaking with him because he was threatened with harm if he said anything (*id.*). Edler alleges Defendant Coffey observed bruises on his neck but failed to photograph the injuries to his back and neck (*id.*).

Edler alleges that on August 22, 2008, he was escorted to the medical department for examination after he filed a grievance alleging sexual misconduct by Forehand and challenging a disciplinary report (*id.*). He states he complained to Nurse Barton that he was experiencing mental

and emotional distress, breathing complications, and migraine headaches (*id.* at 12). He also told her that Forehand had subjected him to sexual misconduct, but there was no penetration (*id.*). Edler states Nurse Barton "slammed [his] medical chart" and left the room without documenting his symptoms or providing treatment (*id.*).

Edler alleges he had another interview with Defendant Coffey on August 22, 2008, but Coffey was more concerned with why Edler never mentioned the sexual assault in their previous interview than Forehand's conduct (*id.* at 11–12). Edler also states Coffey knew that officers continued to threaten him about writing grievances, but he failed to provide protection from officers (*id.* at 12).

Edler alleges a hearing was held on September 17, 2008, to determine whether he should be placed on close management custody status (*id.* at 10). Assistant Warden Washington and Captain Porter (neither of whom are Defendants in this action) and Defendant Schwarz participated in the review hearing (*id.* at 10). Edler alleges Schwarz threatened to keep him in confinement and make sure he was placed on close management status (*id.*). Edler states he filed a formal grievance to Defendant Hall, but Hall returned the grievance without a response because Edler failed to first file an informal grievance (*id.*).

Edler asserts that on September 28, 2008, he filed several informal and formal grievances regarding Defendant Sexton's placing razor blades in his food (*id.* at 11). He states Defendant Hall denied his grievances even though he submitted the razor blades with the grievances (*id.*).

Elder states he was transferred from HCI on October 21, 2008, without receiving responses from the Florida Department of Correction's (DOC's) Bureau of Inmate Grievance Appeals to his grievances he submitted in August regarding Forehand's sexual misconduct (*id.* at 11). Upon his arrival at Santa Rosa Correctional Institution, he received approximately fifteen responses to his grievances, which the Bureau had sent to HCI after he had been transferred (*id.*). Edler states the Bureau denied him relief even though he proved that officials at HCI were "lieing [sic] on the appeal process" and "fabricating the disciplinary reports appeal" (*id.*).

III.    LEGAL STANDARDS

    A.    <u>Summary Judgment Standard</u>

In order to prevail on their motions for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. Anderson, 477 U.S. at 248. An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*; *accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust Co. v. Fidelity and Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." Anderson, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. at 2512). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex Corp., 477 U. S. at 324 (quoting Fed. R. Civ. P. 56(e)). Plaintiff must either point to evidence in the record or present

Case No.: 5:08cv275/SPM/EMT

additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994). The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment. *See* Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Sammons v. Taylor, 967 F.2d 1533, 1544–45 & n.5 (11th Cir. 1992).

      B.      Eighth Amendment Standard — Deliberate Indifference to Safety

A prison official can be liable to a prisoner for exhibiting deliberate indifference to a known danger. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990). However, the known risk of injury must have been a strong likelihood, rather than a mere possibility, before an official's failure to act can constitute deliberate indifference. Edwards v. Gilbert, 867 F.2d 1271, 1276 (11th Cir. 1989). The prisoner must show that he was subjected to a substantial risk of serious harm, and that the prison officials knew of and disregarded an excessive risk to his safety. *See* Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1977–79, 128 L. Ed. 2d 811 (1994).

Additionally, supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d

1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted). Moreover, where there is no support for any claims made against the supervisors in their individual capacities, there is no basis and no support for similar claims made against them in their official capacities. *See* Mann v. Taser Intern., Inc., 588 F.3d 1291, 1308–09 (11th Cir. 2009).

      C.      Eighth Amendment Standard — Deliberate Indifference to Medical Needs

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners. Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal

quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030,

1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

  D. Due Process Standard

The legal standard applicable to claims of due process violations is set forth in the analysis of the claims *infra*.

IV. ANALYSIS

  A. Deliberate Indifference to Safety

Edler contends Warden Hall, Inspector Coffey (the institutional inspector at HCI), and Ms. Wellhausen (an employee of the DOC's office of inmate grievances and appeals) were deliberately indifferent to his safety because they failed to adequately investigate his allegations of excessive force and sexual assault by Forehand. Edler admits that none of these Defendants sexually or physically assaulted him or physically injured him (Doc. 124, Edler's answers to interrogatories at 11, 13–14, 17–18), and he does not allege that any of them were present when it occurred. Additionally, there is no evidence that Hall, Coffey, or Wellhausen directed Forehand to act unlawfully, that there was a history of widespread abuse that put them on notice of the alleged unlawful conduct, or that any of them otherwise knew that Forehand would act unlawfully and failed to stop him from doing so. Moreover, there is no evidence that the alleged sexual assault or use of excessive force was the result of a custom or policy of Hall, Coffey, or Wellhausen.

  Furthermore, the evidence is insufficient to support Edler's claim of deliberate indifferent based upon Defendant Coffey's alleged failure to adequately investigate Forehand's conduct. In support of the motion for summary judgment, Defendant Coffey submitted his own affidavit stating that he served as an inspector at HCI during the period of time material to this lawsuit (Doc. 102-3, Affidavit of Rodney Coffey ¶ 5). He states that as part of his investigation into the alleged incident involving Defendant Forehand, he interviewed Edler and Defendant Marsh, the only witness (Doc. 102-3, Coffey Aff. ¶ 6). Coffey states Marsh told him that Edler was not physically or sexually assaulted in any way (*id.* ¶ 7). Coffey states that during his interview with Edler on August 8, Edler told him he had been battered but did not allege any sexual assault (*id.* ¶¶ 8, 9). Coffey states that during his interview with Edler on August 22, 2008, Edler alleged he was sexually assaulted by Forehand (*id.* ¶ 10). Coffey states that prior to that interview, Edler was examined by a nurse, who

Case No.: 5:08cv275/SPM/EMT

did not find any evidence of sexual assault or any type of injury (*id.* ¶ 11). Coffey states after the August 22 interview, he determined that Edler's allegations were baseless because his story was overwhelmingly contradictory (*id.* ¶ 12). He states that based upon his interviews, he was instructed by his supervisor not to proceed with a formal investigation because there were no corroborating witnesses and Edler's story was frequently contradictory (*id.* ¶ 13). Coffey states that from August to October of 2008, he was never aware of any substantial risk of serious harm to Edler (*id.* ¶ 17).

Edler contends Coffey's investigation was inadequate because he delayed initiating the investigation, failed to take photographs of the injuries on his neck, and failed to place him in protective custody after Edler told him he did not feel safe talking to anyone about the incident because he was threatened by correctional officials not to say anything. As evidence of the delay, Edler submitted a Department of Corrections Incident Report showing that Nurse Dodds reported the August 2 incident of staff abuse on that date, and the report was forwarded to Coffey on August 4 (Doc. 155, Ex. G).[6] He also submitted a copy of a letter from the Florida First District Court of Appeal stating that it had received a letter from Edler on August 6 alleging misconduct by prison officials, and on August 8, 2008, the court forwarded Edler's letter to the DOC's Inspector General Paul Decker (Doc. 155, Ex. H). Edler alleges Coffey would not have investigated the incident had the Florida court not contacted Coffey's supervisor. With regard to Coffey's failure to place him in protective custody, Edler states he told Coffey during the interviews on August 8 and August 20 that he was "in fear of staff and in fear for [his] life" and did not feel safe talking to anyone about the Forehand incident because he was threatened by correctional officials not to say anything about it (Doc. 155, Ex. L, Second Edler Aff. ¶¶ 8–10).

Edler's allegations concerning a delay in initiating the investigation are purely speculative. Even assuming that Coffey received Nurse Dodds' incident report on August 4, there is no evidence to suggest that the four-day delay in interviewing Edler was deliberate. Moreover, even if Coffey deliberately delayed four days and failed to take photographs of Edler's neck, Edler has failed to show that this conduct posed a substantial risk of serious harm to his safety. Additionally, there is insufficient evidence from which a reasonable jury could conclude that Inspector Coffey knew that

---

[6] Although some information on Nurse Dodds' report is stricken with a black marker, the stricken information is easily discernible.
Case No.: 5:08cv275/SPM/EMT

maintaining Edler in his current housing situation, instead of placing him in protective custody, posed an excessive risk to his safety. Edler's general statement to Coffey that officers had threatened him and he feared for his life, devoid of any specifics (for example, who made them, when they were made, and the nature of the threats), devoid of any indication that the threats were accompanied by conduct supporting the credibility of the threats, and devoid of any indication that Edler actually requested protective custody from Coffey, is insufficient to show that Coffey knew that maintaining Edler in his current housing situation posed an excessive risk to his safety. Therefore, Edler failed to state a claim of deliberate indifference with regard to Coffey's investigation of the alleged incident involving Forehand.

With regard to Warden Hall, Edler contends he was deliberately indifferent to his safety because he denied his grievances without investigating his allegations and failed to place him in protective custody. In support of the motion for summary judgment, Defendant Hall submitted his own affidavit stating that he was the warden of HCI during the time period relevant to this lawsuit (Doc. 102-1, Affidavit of M.L. Hall ¶ 3). He states he had little personal contact with Edler during Edler's confinement at HCI, and his contact was limited to weekly visits to the housing units at HCI and reviewing the numerous informal and formal grievances filed by Edler and taking appropriate action upon such grievances (*id.*, ¶¶ 5, 6). Hall states he was never aware of any substantial risk of serious harm to Edler (*id.* ¶ 10).

In response to the motion for summary judgment, Edler submitted copies of two grievances he filed with Warden Hall, Grievance Log Numbers 0808-107-043 and 0808-107-045 (Doc. 155, Ex. B, Edler Aff. ¶¶ 8–10; Ex. C). Additionally, Edler states that in September of 2008, during one of Hall's "weekly rounds" to the confinement unit, Edler asked Hall to place him in protective custody based upon the alleged incident of sexual abuse (Doc. 155, Ex. B, Edler Aff. ¶ 4). Edler states Hall responded that Edler "[wrote] about a lot of stupid things," and protective custody was unnecessary (*id.* ¶ 6). In addition to his own affidavit, Edler submitted an affidavit from Inmate Hart stating he heard Hall state the same thing (Doc. 155, Ex. A, Affidavit of Jeremy Hart; Ex. E., Second Affidavit of Jeremy Hart ¶¶ 4–7).

Initially, Hall's denial of Edler's grievances concerning Forehand's conduct does not provide a basis for holding him liable for the conduct. *See* Wayne, 197 F.3d at 1106 (filing a grievance with

a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied). Additionally, viewing the evidence in the light most favorable to Edler, there is insufficient evidence from which a reasonable jury could conclude that Warden Hall knew that maintaining Edler in his current housing situation, instead of placing him in protective custody, posed an excessive risk to his safety. The two grievances filed with Hall, Grievance Log Numbers 080-107-043 and 080-107-045, are insufficient to demonstrate a genuine issue of material fact as to as to whether Hall knew that Edler's housing situation placed him at substantial risk of serious harm. Grievance Log Number 080-107-043 did not include any allegations of threats by correctional officers in Edler's housing unit, rather it was an appeal of a disciplinary report Edler received as a result of his saying "Fuck you" to Forehand (*see* Doc. 155, Ex. C). Although Grievance Log Number 080-107-045 included specific allegations of threats by officers (including Officer Langford's threat to "get rid of your ass," Captain Scott's threat that nothing would happen if Edler "kept everything quiet," Officer Watkins' threat to gas Edler and that Edler would "wake up in a body bag" if he said anything, and Colonel Schwarz's threat that Edler would "rot" in confinement if Edler said anything about the sexual assault), the undisputed evidence shows that three weeks passed between the time the threats were allegedly made and the time Edler filed the grievance (Edler alleged the threats were made on August 2 and August 5, and he submitted the grievance on August 26, 2008 (*see* Doc. 155, Ex. C)).[7] Furthermore, there was no indication in the grievance that any of the threats were accompanied by conduct supporting the credibility of the threats or that the threats were otherwise more than idle. Moreover, Edler's request for protective custody during Hall's "rounds" in September of 2008, based upon the alleged sexual abuse by Forehand the previous month, was insufficient to suggest he was presently at substantial risk of serious harm. Therefore, this evidence is insufficient to demonstrate a genuine issue of material fact as to whether Hall knew that there was a strong likelihood that maintaining Edler in his current housing situation, instead of placing him in protective custody, posed an excessive risk to Edler's safety.

---

[7] The grievances submitted by Edler show that he signed them on August 24 and submitted them on August 26 (*see* Doc. 155, Ex. C)

Case No.: 5:08cv275/SPM/EMT

With regard to Defendant Wellhausen, Edler contends she was deliberately indifferent to his safety because she failed to respond to his first grievance concerning the incident involving Forehand, and she failed to process his report of sexual abuse in accordance with the Prison Rape Elimination Act (PREA), 42 U.S.C. §§ 15601–15609 (*see* Doc. 155, Ex. L, Second Edler Aff. ¶¶ 17–20). In support of the summary judgment motion, Wellhausen submitted her own affidavit stating that she was employed with the DOC's office of Inmate Grievances and Appeals during the time period relevant to this lawsuit (Doc. 102-2, Affidavit of Genie Wellhausen ¶ 3). She states in the time period from August of 2008 to October of 2008, she was never aware of any substantial risk of serious harm to Edler (*id.* ¶ 11).

Initially, as previously discussed, Wellhausen's failure to respond to Edler's grievance concerning Forehand's conduct does not provide a basis for holding her liable for the conduct. *See* Wayne, 197 F.3d at 1106. Additionally, Edler's contention that Wellhausen was required by the PREA to follow certain procedures in investigating his claim of sexual assault is meritless. The undisputed evidence establishes that the PREA is inapplicable to this case because Edler does not allege he was raped, as that term is defined in the PREA.[8] Edler alleges Forehand exposed his penis

---

[8] The PREA includes the following definitions:

(1) Carnal knowledge

The term "carnal knowledge" means contact between the penis and the vulva or the penis and the anus, including penetration of any sort, however slight.

. . . .
(5) Oral sodomy

The term "oral sodomy" means contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus.

. . . .
(9) Rape

The term "rape" means–

    (A) the carnal knowledge, oral sodomy, sexual assault with an object, or sexual fondling of a person, forcibly or against that person's will;

    (B) the carnal knowledge, oral sodomy, sexual assault with an object, or sexual fondling of a person not forcibly or against the person's will, where the victim is incapable of giving consent because of his or her youth or his or her temporary or permanent mental or physical incapacity; or

and demanded oral sex, but he does not allege he had actual physical contact with Forehand's penis. Therefore, an investigation of Edler's allegations was not required under the PREA. *See* 42 U.S.C. § 15609.

In light of the above discussion, Defendants Coffey, Hall, and Wellhausen are entitled to summary judgment on Edler's claims of deliberate indifference to his safety.

B.    Medical Care

Edler additionally claims that Hall, Coffey, and Wellhausen were deliberately indifferent to his medical needs because they failed to provide medical treatment for the injuries he allegedly suffered as a result of Forehand's use of excessive force. In support of the motion for summary judgment, Coffey states in his affidavit that prior to his interview with Edler on August 8, Edler was examined by a nurse, who did not find any evidence of sexual assault or any type of injury (Doc. 102-3, Coffey Aff. ¶ 11). The record from the post-use-of-force examination on August 8 included the following summary: neck supple; no complaint of discomfort on palpation; no open areas; no discoloration; complaint of discomfort upon looking and bending neck to right; complaint of discomfort when bending head back to look at ceiling; complaint of discomfort upon palpation to mid and lower back; no swelling; no discoloration; no knotting noted to palpation; range of motion to 75% (Doc. 124 at 55). The record also indicates that no treatment was provided, and Edler was instructed to stretch his muscles with gentle exercise (*id.*).

Additionally, Defendants Hall, Wellhausen, and Coffey state that Edler never declared a medical emergency to them or requested medical attention from them (Doc. 102-1, Hall Aff. ¶ 11;

---

> (C) the carnal knowledge, oral sodomy, sexual assault with an object, or sexual fondling of a person achieved through the exploitation of the fear or threat of physical violence or bodily injury.
>
> (10) Sexual assault with an object
>
> The term "sexual assault with an object" means the use of any hand, finger, object, or other instrument to penetrate, however slightly, the genital or anal opening of the body of another person.
>
> (11) Sexual fondling
>
> The term "sexual fondling" means the touching of the private body parts of another person (including the genitalia, anus, groin, breast, inner thigh, or buttocks) for the purpose of sexual gratification.

42 U.S.C. § 15609.

Doc. 102-2, Wellhausen Aff. ¶ 12; 102-3, Coffey Aff. ¶ 18). Hall, Wellhausen, and Coffey also state that from August to October of 2008, they were never aware that Edler had any serious medical needs or that a substantial risk of serious harm to Edler existed (Hall Aff. ¶¶ 9, 10; Wellhausen Aff. ¶¶ 10, 11; Coffey Aff. ¶¶ 16, 17).

Defendants also submitted Edler's deposition, in which he admitted that the only visible injuries he had during his first interview with Coffey on August 8 were scratches on his neck (Doc. 128, Edler Dep. 62:16–19, Feb. 16, 2010). He additionally admitted, in his responses to Defendants' request for admissions, that he did not ask Wellhausen or Coffey for medical treatment (Doc. 124, Pl.'s Resp. to Def.'s Req. for Admiss. # 27, # 28). Edler also admitted that he could not recall whether he told Hall that he needed medical attention when the two of them spoke in September of 2008 (Doc. 128, Edler Dep. 59:24– 60:1, Feb. 16, 2010).

Edler attempts to rebut this evidence by arguing that Hall was aware of his need for medical treatment by virtue of grievances he submitted on August 26, 2008, Grievance Log Numbers 0808-107-043 and 0808-107-045 (Doc. 155, Ex. B, Affidavit of Curley Edler ¶¶ 8–10; Ex. C). He also states that in September of 2008, he told Hall that he had been denied proper medical treatment from Nurse Dodds, and that Defendants Forehand, Marsh, Watkins, Schwarz, Langford, and Scott had denied his medical emergencies following the sexual assault (Doc. 155, Ex. B, Edler Aff. ¶ 5). As to Defendant Coffey, Edler states Coffey "acknowledged" the injuries on his neck during the interview on August 8 (Doc. 155, Ex. L, Second Affidavit of Curley Edler ¶ 13). Edler argues that Wellhausen was aware of his medical needs by virtue of grievances he wrote on August 17 and August 24, 2008 (Doc. 155, Ex. L, Second Elder Aff. ¶¶ 16, 18, Ex. O).

Viewing the evidence in the light most favorable to Edler, there is insufficient evidence from which a reasonable jury could conclude that Coffey, Hall, or Wellhausen was subjectively aware that Edler had an objectively serious medical need which required attention. Edler's complaints to Warden Hall, in grievances and during Hall's visit to Edler's dormitory, that Nurse Dodds and several correctional officers had denied him proper medical treatment following the alleged sexual assault on August 2, are insufficient to suggest that Warden Hall subjectively knew that Edler had a serious medical need. The summary judgment evidence demonstrates that Edler's complaints were made at least three weeks after the alleged deprivation of medical care by Nurse Dodds and the

officers,[9] and there is no evidence that Hall was aware of any facts suggesting Edler had any ongoing serious medical needs. The medical records on file show that none of the medical professionals that examined Plaintiff diagnosed any medical need that required treatment (*see* Doc. 124 at 54, 55). Furthermore, there is no evidence that Edler had any injuries on September 13 that were so obvious that even a lay person would easily recognize the necessity for a doctor's attention; in fact, Edler admitted in his deposition that as of August 8, the date of his first interview with Inspector Coffey, he did not show any signs of injury other than the scratches on his neck (*see* Doc. 128-1, Edler Dep. 62:16–19). Moreover, there is no evidence that Edler informed Hall of any ongoing serious medical need in his grievances or during the visit on September 13. Therefore, Warden Hall is entitled to summary judgment on Edler's Eighth Amendment claim of denial of medical treatment.

Similarly, Edler's grievances to Defendant Wellhausen are insufficient to demonstrate a genuine issue of material fact as to whether Wellhausen subjectively knew that Edler had a serious medical need. There is no evidence that Edler informed Wellhausen of any ongoing serious medical need in either the August 17 or August 24 grievance, and Edler admitted he did not ask Wellhausen for medical treatment. Therefore, Wellhausen is entitled to summary judgment on Edler's Eighth Amendment claim of denial of medical treatment.

Edler has also failed to demonstrate a genuine issue of material fact ast to whether Inspector Coffey knew that Edler had a serious medical need. As previously noted, Edler admitted in his deposition that as of August 8, the date of his first interview with Inspector Coffey, he did not show any signs of injury other than the scratches on his neck. Additionally, the medical assessment that Edler states he received prior to his interview with Coffey on August 8 (*see* Doc. 128-1, Edler Dep. 38:2–4) indicated no need for medical treatment (*see* Doc. 124 at 55). Therefore, Inspector Coffey is entitled to summary judgment on Edler's Eighth Amendment claim of denial of medical treatment.

C.  Due Process

Edler contends Coffey, Hall, and Wellhausen violated his due process rights by failing to investigate the incident involving Forehand and failing to adequately process his grievances (*see* Doc. 36, Statement of Claims).

---

[9] As previously noted, Edler submitted the grievances to Warden Hall on August 26 (*see* Doc. 155, Ex. C), and Edler admitted in his deposition that Hall's visit to his dormitory occurred on September 13 (*see* Doc. 128-1, Edler Dep. 59:3–16, Feb. 16, 2010)

Case No.: 5:08cv275/SPM/EMT

The Eleventh Circuit has explained the difference between substantive and procedural due process rights. "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (quoting McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)). Substantive due process rights are created by the Constitution, and "no amount of process can justify [their] infringement." *Id.* (internal quotation marks omitted) (citing McKinney, 20 F.3d at 1557). In order to have a substantive due process claim, Edler must have a substantive right created by the Constitution. *Id.* Edler has no substantive right of any kind to an investigation of his claim of sexual assault and excessive force by the Department of Corrections, much less one created by the Constitution. *See id.* (arrestee has no substantive right to an investigation of her excessive force complaint by the sheriff's office, much less a right created by the Constitution).

Elder also has no procedural due process claim. Procedural due process requires notice and an opportunity to be heard before any governmental deprivation of a liberty or property interest. Vinyard, 311 F.3d at 1356 (citing Zipperer v. City of Fort Myers, 41 F.3d 619, 623 (11th Cir. 1995)). Edler does not cite, nor has the undersigned found, any federal or state court decision, statute, regulation or other source of law that gives him an entitlement to an internal investigation by the DOC of his complaints of sexual assault and excessive force by Forehand. While DOC regulations require its employees to abide by certain rules of conduct and provide for disciplinary actions that may be taken upon violation of those rules (*see* 33 Fla. Admin. Code 33-208.002, 33-208.003), those regulations do not create a right of a victim of alleged misconduct to an internal investigation of his allegations. Furthermore, as previously discussed, Edler's contention that an investigation was required under the PREA is meritless.

Additionally, to the extent Plaintiff asserts a due process claim based on alleged inadequacies in Wellhausen and Hall's processing of his administrative grievance at the institutional and appellate levels, his claim is subject to dismissal. The Eleventh Circuit has agreed with other circuits that have decided that a prisoner does not have a constitutionally protected liberty interest in an inmate grievance procedure. *See* Thomas v. Warner, 237 Fed. Appx. 435, 437–48 (11th Cir. 2007) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (stating that Constitution creates no entitlement to voluntarily established grievance procedure); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)

(same)). Even if a grievance mechanism has been created for the use of state inmates, the mechanism involves a procedural right, not a substantive one, and it does not give rise to a liberty interest protected by the Due Process Clause. *See* Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). Thus, if the state elects to provide a grievance mechanism, violations of its procedures, or even a failure to respond to the prison grievance, do not give rise to a § 1983 claim. *See* Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Hoover v. Watson, 886 F.Supp. 410, 418–19 (D. Del. 1995). Therefore, Edler has failed to state a due process claim with regard to Coffey, Hall, and Wellhausen's alleged failure to investigate the incident involving Forehand and failure to adequately respond to grievances.

V.  CONCLUSION

Upon consideration of Edler's claims and the evidence submitted, the undersigned recommends that the motion for summary judgment filed by Defendants Hall, Wellhausen, and Coffey be granted, and these Defendants be dismissed from this action.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the motion for summary judgment filed by Defendants Hall, Wellhausen, and Coffey (Doc. 102) be **GRANTED**.

2. That Plaintiff's claims against Defendants Hall, Wellhausen, and Coffey be **DISMISSED with prejudice**.

3. That Defendants Hall, Wellhausen, and Coffey be **DISMISSED** from this action.

At Pensacola, Florida this 13th day of May 2010.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only. A copy of objections shall be**

**served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**